UNITED STATES DISTRICT COURT
FOR THE
SOUTHERN DISTRICT OF FLORIDA

CASE NO: 18-61017-CIV-ALTONAGA

FEDERAL TRADE COMMISSION,

    Plaintiff,

-vs-

POINTBREAK MEDIA, LLC, et al,

    Defendants

_____/

**DEFENDANTS DUSTIN PILLONATO AND JUSTIN RAMSEY'S RESPONSE AND OBJECTIONS TO RECEIVER'S MOTION TO COMPEL TURNOVER OF PERSONAL LAPTOP COMPUTERS AND PERSONAL CELL PHONES**

    The Receiver, Jonathan E. Perlman, has demanded that the defendants Dustin Pillonato and Justin Ramsey turnover their personal laptop computers and personal cell phones. They have refused, citing their Fifth Amendment Rights under the United States Constitution. Since Defendants Dustin Pillonato and Justin Ramsey each purchased their own laptop computer and cell phone with their own personal funds, these electronic devices do not belong to, nor are they property of the defendant corporation. They are the sole and exclusive property of the individual defendants.

The Receiver wants to obtain these personal computers and cell phones so that he may search them and download the entire contents of them for the purpose of seizing information contained therein and using this information against the defendants in this - or possibly some other - legal action.

The defendants were served with a Complaint for Permanent Injunction and Other Equitable Relief in this case. That Complaint states:

> Defendants operate a telemarketing scam in which they target small business owners with false threats of removal from Google's search engine and false promises of unique key words in order to convince them to purchase Google claiming and verification service.

The Complaint goes on and further states that:

> Defendants also target each paying customer with an upsell that falsely promises that the consumer's business will receive first-place placement in Google search results.

The Complaint further states that:

> In late October 2017, when Defendants lost the ability to process credit card transactions, they wrote themselves $100.00 check from at least 250 consumers'

bank accounts without those consumers' knowledge or authorization.

The Complaint also alleges that the Defendants placed threatening robocalls to small business owners and consumers. This 31-page Complaint claims that the Defendants, through their companies, defrauded various businesses and individual consumers by making and using false statements and other predatory and threatening statements to sell Google listing services. The allegations in the Complaint for Permanent Injunction and Other Equitable Relief, charge conduct which, if proven, could constitute the crimes of theft, wire fraud, mail fraud, money laundering, and credit card fraud. This Complaint reads more like a criminal indictment than it does a civil complaint.

## **DEFENDANT'S FIFTH AMENDMENT CLAIM**

The Defendants, Dustin Pillonato and Justin Ramsey, based on the criminal allegations in the Complaint, have a real and genuine fear of criminal prosecution. That fear is further heightened considering that the complaint is filed by the Federal Trade Commission, a United States Government agency. This is not a private civil complaint filed by an individual or business against the Defendants; it is the power and might of the entire United States Government, with all of its resources. For all the Defendants Pillonato and Ramsey know, the Federal Trade Commission may

be working hand in hand with the FBI or some other United States Government criminal investigation agency, or the United States Attorney's Office criminal division investigating the two Defendants for any of the numerous Federal crimes alleged in the Complaint.

It is perfectly clear that the Defendants have a legitimate expectation of privacy in their personal cell phones and their personal laptop computers. It is equally clear that the Defendants have a well-founded fear of prosecution for the numerous Federal crimes that are listed in the Complaint. Based upon these two legitimate concerns, the Defendants have refused to turn over the cell phones and laptop computers to the Receiver, citing their rights under the Fifth Amendment of the United States Constitution. The law does not require the Defendants to state what incriminating items may be found in the cell phones and laptops, nor is it required that the Defendants state how this incriminating evidence may be used against them. It is sufficient for the Defendants to raise their Fifth Amendment protections if they have a legitimate and well-founded fear of prosecution.

The privilege afforded not only extends to answers that would in themselves support a conviction. . . . but likewise embraces those which would furnish a link in the chain of evidence needed to prosecute. . . [I]f the witness, upon interposing his claim, were required to prove the hazard. . . he would be compelled to surrender the very protection which the privilege is designed to guarantee. To sustain the privilege, it need only be evident from the implications of the question, in the setting in which it is asked, that a

responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result. *Hoffman v. United States*, 341 U.S. 479, 486; *see also* *Emspak v. United States*, 349 U.S. 190 (1955); *Blau v. United States*, 340 U.S. 159.  Thus, a judge who would deny a claim of the privilege must be perfectly clear, from a careful consideration of all the circumstances in the case, that the witness is mistaken, and that the answer[s] cannot possibly have such tendency to incriminate.  341 U.S. at 488 (quoting *Temple v. Commonwealth*, 75 Va. 892, 898 (1881).  For an application of these principles, see *Malloy v. Hogan*, 378 U.S. 1, 11 (1964), and *id* at 33 (Justices White and Steward dissenting).  Where government is seeking to enforce an essentially noncriminal statutory scheme through compulsory disclosure, some Justices would apparently relax the *Hoffman* principles. *CF* *California v. Byers*, 402 U.S. 424 (1971) (plurality opinion).  The witness must have reasonable cause to apprehend danger from an answer, but he may not be the sole judge of the validity of his claim.  While the trial judge may not require a witness to disclose so much of the danger as to render the privilege nugatory, he must determine whether there is a reasonable apprehension of incrimination by considering the circumstances of the case, his knowledge of matters surrounding the inquiry, and the nature of the evidence which is demanded from the witness.  *Hoffman v. United States*, 341 U.S. 479 (1951); *Mason v. United States*, 244 U.S. 362 (1917).  One must explicitly claim his privilege or he will be deemed to have waived it, and waiver may be found where the witness has answered some preliminary questions but desires to stop at a certain point.  *Roger v. United States*, 340 U.S. 367 (1951); *United States v.*

*Monia*, 317 U.S. 424 (1943). The "waiver" concept here as in other recent cases has been pronounced "analytically [un]sound," with the Court preferring to reserve the term "waiver" for the process by which one affirmatively renounces the protection of the privilege. ***Garner v. United States***, 424 U.S. 648, 654, n.9 (1976). Thus, the Court has settled upon the concept of "compulsion" as applied to "cases where disclosures are required in the face of claim of privilege. *Id*. "[I]n the ordinary case, if a witness under compulsion to testify makes disclosures instead of claiming the privilege, the Government has not 'compelled' him to incriminate himself." *Id*. at 654. Similarly, the Court has enunciated the concept of "voluntariness" to be applied in situations where it is claimed that a particular factor denied the individual a "free choice to admit, to deny, or to refuse to answer." *Id*. at 654 n.9, 656-65. A witness has traditionally been able to claim the privilege in any proceeding whatsoever in which testimony is legally required when his answer might be used against him in the proceeding or in a future criminal proceeding or when it might be exploited to uncover other evidence against him. Thus, not only may a defendant or a witness in a criminal trial, including a juvenile proceeding, ***In re Gault***, 387 U.S. 1, 42 – 57 (1967), claim the privilege but so may a party or a witness in a civil court proceeding. ***McCarthy v. Arndstein***, 266 U.S. 34 (1924), a potential defendant or any other witness before a grand jury, ***Reina v. United States***, 364 U.S. 507 (1960); ***Counselman v. Hitchcock***, 142 U.S. 547, 563 (1892), or a witness before a legislative inquiry, ***Watkins v. United States***, 354 U.S. 178, 195 (1957); ***Quinn v. United States***, 349 U.S. 155 (1955); ***Emspak v. United States***, 349 U.S. 190 (1955), or before an administrative body. ***In re Groban***,

352 U.S. 330, 333, 336 – 37, 345 – 46 (1957); **ICC v. Brimson**, 154 U.S. 447, 478 – 80 (1894).

The Fifth Amendment privilege is not ordinarily dependent upon the nature of the proceedings in which the testimony is sought or to be used. It applies alike to civil and criminal proceedings, wherever the answer might tend to subject one to criminal responsibility. Back as far as 1924 in **McCarthy v. Arndstein**, 266 U.S. 34 (1924) the Supreme Court has made it clear that a person cannot be compelled to testify in a civil case, when the compelled testimony could later be used against him in a criminal case.

Although the actual wording of the Fifth Amendment to the United States Constitution says a person shall not be "compelled in any criminal case to be a witness against himself" the right has been found applicable to civil actions as well. Natural persons in danger of facing criminal charges do not have to testify, answer interrogatories, or produce documents about matters potentially incriminating to them. The privilege is personal to the individual who might be incriminated **Rogers v. United States**, 340 U.S. 367, 371 (1951); **United States v. Nobles**, 422 U.S. 225, 233, 95 S.Ct. 2160, 2167 (1975) therefore if incriminating documents are in the possession of employees they, personally cannot be compelled to produce them, not because their answers were compelled in creating the documents, but because they cannot be compelled to divulge incriminating information in response to Government

action such as a subpoena or court order. See **United States v. Doe**, 465 U.S. 605, 104 S.Ct. 1237 (1984).

In 1997 the Eleventh Circuit Court explained in **United States v. Gecas**, 120 F.3d 1419 (1997) that the threat of future prosecution must actually be "reasonable, real, and appreciable" in order for one to be justified in asserting their Fifth Amendment right. One cannot simply claim that you might someday be prosecuted for your answers in order to avoid providing information in a civil case. In this case, there is obviously a real and present danger that information found upon the Defendants laptop computers and cell phones could be used against them in a criminal prosecution. As stated in **Kastigar v. United States**, 406 U.S. 441, 445 (1972) the privilege can be asserted in any proceeding, civil or criminal, administrative or judicial, investigatory or adjudicatory.

## DEFENDANT'S FOURTH AMENDMENT CLAIM

Not only do the Defendants have Fifth Amendment rights in this case they also have Fourth Amendment rights to protect. The Receiver is trying to violate both of these Constitutional rights.

The Receiver seeks to obtain a court order forcing the Defendants to turn over their personal telephones and personal laptop computers so that he

may conduct an illegal search of them without a warrant. After conducting that search, he then wishes to conduct an illegal seizure of the information contained therein without a warrant.

The Defendants hereby invoke their United States Constitutional Rights against illegal search and seizure as protected by the Fourth Amendment of the United States Constitution. The Fourth Amendment protects "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrant shall issue, upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the person or things to be seized. The Receiver wishes to violate the Defendants Fourth Amendment rights and circumvent the United States Constitution by simply seizing the Defendants personal cell phones and personal laptops, and searching them and seizing the contents therein. There can be no question that the Defendants Pillonato and Ramsey have a legitimate expectation of privacy in their personal cell phones and their personal laptop computers. They exclusively have the right to exclude all others from viewing the contents of these items. Within the meaning of the law, they have "standing" to protest the search and seizure of these items.

As for whether one has a "legitimate" expectation of privacy that society finds reasonable to recognize, Courts have said that legitimate expectation of privacy by law must have a source outside of the Fourth Amendment, either by reference to concepts of real or personal property law or

to understandings that are recognized and permitted by society. *Rakas v. Illinois*, 439 U.S. 128 (1978). In *United States v. White*, 401 U.S. 745, 786 the Court held:

> Government could not condition "subjective expectations" by, say, announcing that henceforth all homes would be subject to warrantless entry, and thus destroy the "legitimate expectation of privacy."

Certain early cases held that the Fourth Amendment was applicable only when a search was undertaken for criminal investigatory purposes. The Supreme Court employed a reasonableness test for such searches without requiring either a warrant or probable cause in the absence of a warrant. But in 1967 the Court held in two cases that administrative inspections to detect building code violations must be undertaken pursuant to warrant if the occupant objects. *Camara v. Municipal Court*, 387 U.S. 523 (1967). We may agree that a routine inspection of the physical condition of private property is a less hostile intrusion than the typical policeman's search for the fruits and instrumentalities of crime. . . .But we cannot agree that the Fourth Amendment interests at stake in these inspection cases are merely "peripheral". It is surely anomalous to say that the individual and his private property are fully protected by Fourth Amendment only when the individual is suspected of criminal behavior. *Camara v. Municipal Court*, supra.

In numerous cases, the Court has referred to the necessity that warrants be issued by a "judicial officer" or a "magistrate." The point of the Fourth Amendment which often is not grasped by zealous officers, is not that

it denies law enforcement the support of the usual inferences which reasonable men draw from evidence, its protection consists in requiring that those inferences be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime. Any assumption that evidence sufficient to support a magistrate's disinterested determination to issue a search warrant will justify the officers in making a search without a warrant would reduce the Amendment to a nullity and leave the people's home secure only in the discretion of police officers. **_Johnson v. United States_**, 333 U.S. 10 (1948).

There are judicially recognized exceptions to the Fourth Amendment warrant requirement. For example: detention short of arrest, also known as stop-and-frisk; search incident to a lawful arrest, as well as vehicular searches, vessel searches, and exigent circumstances. None of these apply to this case and the mere fact that it is a civil case does not change the fact that a search warrant must be issued to search the personal property of the two Defendants in this case.

The Receiver claims that he has a right to the Defendants' personal laptop computers and personal cell phones pursuant to the exercise of its broad equitable powers to protect the assets of the Receivership's estate. The right of the Receivership's estate may never trample over the Constitutional rights of the Defendants.

Page 11
Law Firm of Frank A. Rubino, Esq., P.A.
550 Biltmore Way, Suite 780, Coral Gables, Florida 33134, Tel: (305) 858-5300, Fax: (305) 350-2001

Here the Receiver states in his motion at page 6, line 8 – 9 "the Receiver has grave concerns that the laptop computers have critical information about the operations of the Receivership Entities." He makes no mention of the Defendants' personal cell phones.

This statement by the Receiver is nothing more than a guess or a hunch. It is certainly not probable cause to conduct a search. Once the Fourth Amendment applies to a particular search or seizure, the next question is under what circumstances is a warrant required. The Supreme Court has ruled that the Constitution expresses a preference for searches, seizures and arrests conducted pursuant to a lawfully executed search warrant. See **_Mincey v. Arizona_**, 437 U.S. 385.

A warrant is a written order signed by a court authorizing a law-enforcement officer to conduct a search, seizure, or arrest. Searches, seizures, and arrests performed without a valid warrant are deemed presumptively invalid, and any evidence seized without a warrant will be suppressed unless a court finds that the search was reasonable under the circumstances.

An application for a warrant must be supported by a sworn, detailed statement made by a law enforcement officer appearing before a neutral judge or magistrate. The Supreme Court has said that probable cause exists when the facts and circumstances within the police officer's knowledge provide a reasonably trustworthy basis for a man of reasonable caution to

believe that a criminal offense has been committed or is about to take place. See **Carroll v. United States**, 267 U.S. 132 (1925).

In this case the Receiver has not applied for a search warrant, he has simply asked the Court to order the Defendants to turn over to him their laptop computers and cell phones so that he may conduct an illegal search and seizure of them.

The Receiver has no probable cause. He barely has a mere suspicion that there may or could be something on the computers or cell phones he could use against the Defendants. This mere suspicion cannot be used to circumvent the Fourth Amendment to the United States Constitution.

For all of the reasons stated herein, this Honorable Court should deny the Receiver's motion to have this court order the Defendants to turn over their laptop computers and cell phones to the Receiver, so he may conduct an illegal search and seizure of them.

    Respectfully submitted,

FRANK A. RUBINO, ESQUIRE
550 Biltmore Way
Suite 780
Coral Gables, FL  33134
(305) 858-5300
frank@frankrubino.com
Fla. Bar No: 209171
  (S) *Frank A. Rubino*
FRANK A. RUBINO, ESQUIRE

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing Defendants Dustin Pillonato and Justin Ramsey's Objection to Receiver's Motion to Compel Turnover of Personal Laptop Computers and Personal Cell Phones was filed via electronic filing using the CM/ECF system with the Clerk of the Court which sent e-mail notification of such filing to all CM/ECF participants in this case this 3rd day of July, 2018.


    (S) *Frank A. Rubino*
    FRANK A. RUBINO, ESQUIRE