UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 18-61017-CIV-ALTONAGA/SELTZER

FEDERAL TRADE COMMISSION,

       Plaintiff,

vs.

POINTBREAK MEDIA, LLC, et al.,

       Defendants.

_____/

## REPORT AND RECOMMENDATION

THIS CAUSE is before the Court on the Defendants Dustin Pillonato and Justin Ramsey's Response and Objections to Receiver's Motion to Compel Turnover of Personal Laptop Computers and Personal Cell Phones ("Objections") [ECF No. 108] and the Order [ECF No. 62] granting in part Receiver Jonathan E. Perlman's Motion to Compel Turnover and for an Order to Show Cause. These matters were referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636 and the Magistrate Rules of the Local Rules of the United States District Court for the Southern District of Florida. [ECF No. 111]. The undersigned has reviewed the file and is otherwise fully advised in the matter. For the reasons set forth below, the undersigned RECOMMENDS that the Objections [ECF No. 108] be OVERRULED.

I.    BACKGROUND

On May 7, 2018, the Federal Trade Commission ("FTC" or "Plaintiff") filed a Complaint for Permanent Injunction and Other Equitable Relief against seven entities and six individuals (collectively, "Defendants") alleging that they engaged in a scheme to

defraud consumers by offering phony Google My Business certification and verification services and search engine optimization services,  in violation of Section 5(a) of the FTC Act, 15 U.S.C. §45(a).  [ECF No. 1].

On May 8, 2018, the Court entered a Temporary Restraining Order ("TRO") against all Defendants, finding that Plaintiff is likely to prevail on the merits and that immediate and irreparable harm would likely result unless Defendants were restrained and a receiver appointed.  [ECF No. 12 at 2-3].[1]  The Court appointed Jonathan Perlman as "Temporary Receiver" of the Receivership Entities with full powers of an equity receiver and to act solely as the agent of the Court.  Id. at 14.  The TRO requires Defendants, including Dustin Pillonato and Justin Ramsey, upon notice, to "immediately transfer or deliver to the Receiver" "[a]ll computers, electronic devices, mobile devices and machines used to conduct the business of the Receivership Entities" and "[a]ll keys, codes, user names and passwords necessary to gain or to secure access to any Assets or Documents of or pertaining to the Receivership Entities, including access to their business premises, means of communication, accounts, computer systems (onsite and remote), Electronic Data Hosts, or other property."  Id. at 18-19.  The TRO directs the Receiver to "[t]ake exclusive custody, control, and possession of all Assets and Documents of, or . . . under the control of, any Receivership Entity, wherever situated."  Id. at 14.  The TRO also authorizes the Receiver to file a "motion seeking compliance or a contempt citation" "in the event that any person or entity fails to deliver or transfer any Asset or Document."  Id. at 19.

---

[1] The undersigned notes that on June 7, 2018, the District Court again found that Plaintiff is likely to prevail on the merits of this action, and it entered a Preliminary Injunction against Defendants, including Dustin Pillonato and Justin Ramsey.  [ECF. No. 64 at 2].

On June 4, 2018, the Receiver filed a Motion to Compel Turnover and for an Order to Show Cause, arguing that Defendants' willful violation of the TRO began almost immediately after they had received notice of its existence. [ECF No. 49].  The Motion sought to compel Pillonato and Ramsey "to turn over (i) their laptop computers and cellphones for imaging; (ii) any and all passwords and/or access codes for desktop computers and cellphones utilized in conducting business by the Corporate Defendants; (iii) three Louis Vuitton backpacks; and (iv) the identity and contact information for the third unidentified person seen with them leaving Ramsey's home after Defendants were served with the FTC's Complaint and this Court's TRO."  Id. at 10.  On June 6, 2018, the District Court heard argument on the Motion to Compel Turnover.  See Hearing Transcript [ECF No. 117].

On June 7, 2018, the District Court entered an Order granting in part the Receiver's Motion to Compel Turnover.  [ECF. No. 62].  More specifically, the Order provided that Pillonato and Ramsey immediately "turn over their laptop computers and cellphones to the Clerk's Office of the Wilkie D. Ferguson Jr. United States Courthouse," which "shall maintain control of the property while the parties brief issues relating to Defendants' asserted claim to the Fifth Amendment's privilege against self-incrimination."  Id. ¶ 1.  The Order further provided that Pillonato and Ramsey immediately turn over to the Receiver "(i) any and all passwords and/or access codes for desktop computers and cellphones utilized in conducting business with the Corporate Defendants in FTC's Complaint [ECF No. 1]; (ii) three Louis Vuitton backpacks; and (iii) the identity and contact information for the third unidentified person seen with Pillonato and Ramsey leaving Ramsey's home after

being served with the FTC's Complaint and the Court's Temporary Restraining Order [ECF No. 12]." Id. ¶ 2.

On June 8, 2018, Pillonato and Ramsey filed a Notice of Compliance confirming that they had delivered to the Clerk's Office their laptop computers and cellphones and had delivered to the receiver "(i) all passwords and/or access codes for desktop computers and cellphones utilized in conducting business with the Corporate Defendants; (ii) two (of three) Louis Vuitton backpacks (on June 7th, 2018); and (iii) the name, address and telephone number for the 'third unidentified person' referred to in the Court's Order." [ECF No. 67 ¶¶ 1, 2].  According to Pillonato and Ramsey, they did not deliver the final Louis Vuitton backpack to the Receiver because they "do not own, possess or have control over that backpack and therefore do not have the ability to turn it over.  However [they] have, through counsel, provided the Receiver with the name, address and phone number for the owner of that backpack."  Id. ¶ 3.

On July 3, 2018, Pillonato and Ramsey filed their Response and Objections to Receiver's Motion to Compel Turnover of Personal Laptop Computers and Personal Cell Phones.  [ECF No. 108].  In their Objections, Pillonato and Ramsey raise not only Fifth Amendment arguments, but also Fourth Amendment arguments against turning the electronic devices over to the Receiver.  On July 5, 2018, the District Court referred these Objections to the undersigned for a Report and Recommendation.  [ECF No. 111].

On July 17, 2018, the Receiver filed a Reply to Defendants' Dustin Pillonato and Justin Ramsey's Response and Objections to Receiver's Motion to Compel Turnover of Laptop Computers and Cellphones ("Reply").  [ECF No. 129].  The Receiver argues that

Pillonato and Ramsey have not raised valid constitutional objections to the turnover of the devices.

On August 9, 2018, the Receiver filed a Notice of Filing Newly Discovered Evidence in Support of Motion to Compel Turnover of Laptop Computers and Cellphones. [ECF No. 146].  Attached to the Notice is the Declaration of the Receiver, in which he advises the Court of a forensic device data report on certain electronic data messages that had been retrieved from an Apple cellphone.  This Apple cellphone had been found while securing Defendants' Deerfield Beach office and had been identified by Receivership Entity employees as belonging to Pillonato.  According to the Receiver, he has discovered that the Deerfield Beach cellphone contained texts from Pillonato stating that the cellphone currently in the Clerk's custody is to be used for "strictly work."  Id. at 7-8.  The Receiver, therefore, contends that the cellphone in the Clerk's custody contains business records of the Corporate Defendants.  Id. at 8.

On August 15, 2018, Ramsey and Pillonato replied to the Receiver's Notice of Filing of Newly Discovered Evidence.  [ECF No. 160].  They argue that the information conveyed by the Receiver had been obtained from a warrantless search of Pillonato's cellphone recovered at the Deerfield Beach office.

On September 6, 2018, the undersigned heard oral argument on Ramsey and Pillonato's Objections.  Their Objections are now ripe for review.

II.   DISCUSSION

Ramsey and Pillonato raise both Fifth and Fourth Amendment arguments against turning over the laptop computers and the cellphones ("electronic devices" or "devices").  They argue that they enjoy a Fifth Amendment privilege against self-incrimination that

5

would be violated by turning over these devices and that they have standing to assert a Fourth Amendment claim that no probable cause exists for the seizure and search (download) of the same devices.

The Receiver counters that on the facts of this case Pillonato and Ramsey possess no Fifth Amendment privilege, that they waived any Fourth Amendment claim, that they would lack standing to assert a Fourth Amendment claim, and that in any event they would be unable to prevail on such a claim as probable cause has already been established to seize and search the laptop computers and the cellphones.

For the reasons set forth more fully below, the undersigned concludes that Pillonato and Ramsey do not enjoy a Fifth Amendment privilege with respect to either the content or the act of production of the devices. The undersigned further concludes that they do not have a viable Fourth Amendment claim as probable cause exists for the seizure and search – the turnover and download – of Pillonato and Ramsey's personal laptop computers and personal cellphones.[2]

A.    Fifth Amendment Claims

Ramsey and Pillonato raise a Fifth Amendment objection to turning over the electronic devices. They assert that "each purchased their own laptop computer and cell phone with their own personal funds [and that] these electronic devices do not belong to,

---

[2] The undersigned notes that Ramsey and Pillonato appear to have complied with ¶ 2 of the Court's Order [ECF No. 62], directed to the passwords, the backpacks, and the identity and contact information of the unidentified individual. The only matters for the undersigned's consideration, therefore, are the constitutional issues with respect to the turnover and download of the electronic devices.

nor are they property of the defendant corporation."[3]   Objection at 1 [ECF No. 108]. Defendants object to the Receiver searching them and downloading their contents to seize the information contained therein and then using this information against the defendants in this, or possibly some other, legal action.  Id. at 2.  According to Pillonato and Ramsy, the Complaint claims that they, through their companies, defrauded various businesses and individual consumers by making and using false statements and other predatory and threatening statements to sell Google listing services; it charges "conduct which, if proven, could constitute the crimes of theft, wire fraud, mail fraud, money laundering, and credit card fraud."  Id. at 3.  They therefore object to turning over the electronic devices based upon "a legitimate and well-founded fear of prosecution."  Id. at 4.  In invoking their Fifth Amendment privilege against self-incrimination, Ramsey and Pillonato rely upon McCarthy v. Arndstein, 266 U.S. 34 (1924), wherein the Court made clear that the privilege "applies alike to civil and criminal proceedings, wherever the answer might tend to subject to criminal responsibility him who gives it."  Id. at 40.

The fundamental flaw in Ramsey and Pillonato's argument is that they have not shown that turning over the electronic devices is testimonial in nature and, therefore, subject to the protections of the Fifth Amendment.  The Fifth Amendment provides that "[n]o person shall be compelled in any criminal case to be a witness against himself."  U.S.

---

[3] The Receiver argues that the assertion by Ramsey and Pillonato that they had purchased the electronic devices with their own personal funds is offered without evidentiary support.  Neither Ramsey nor Pillonato identified any of the electronic devices in his respective sworn financial disclosure form.  The Receiver notes that he brought this omission to the Court's attention at the hearing on the preliminary injunction, but despite representations that each would amend his financial disclosure form, neither Pillonato nor Ramsey have done so.

Const. Amend. V.  The Fifth Amendment's protections therefore come into play only "when the accused is compelled to make a testimonial communication that is incriminating." Fisher v. United States, 425 U.S. 391, 408 (1976); see United States v. Hubbell, 530 U.S. 27, 34 (2000) ("The word 'witness' in the constitutional text limits the relevant category of compelled incriminating communications to those that are 'testimonial' in character").

The Fifth Amendment does not apply to the contents of voluntarily prepared documents.[4]  Hubbell, 530 U.S. at 35-36.  The Supreme Court has consistently held that when a person has voluntarily created a document, that person may be compelled to produce the document even though it may contain incriminating information.  See, e.g., United States v. Doe, 465 U.S. 605, 612 n. 10 (1984). In Hubbell, the Supreme Court reaffirmed "the settled proposition that a person may be required to produce specific documents even though they contain incriminating assertions of fact . . . because the creation of those documents was not compelled within the meaning of the privilege."  530 U.S. at 35-36; accord In re Grand Jury Subpoena Duces Tecum Dated March 25, 2011, 670 F. 3d 1335, 1342 (11th Cir. 2012).  Additionally, the Fifth Amendment privilege against self-incrimination does not apply to incriminating evidence that was generated prior to the demand that this evidence be produced.  Fisher, 425 U.S. at 391 (holding that papers which were voluntarily prepared prior to the issuance of the summons could not contain compelled testimonial evidence).  Thus, once an individual chooses voluntarily to prepare

---

[4] The Receiver acknowledges that to the extent any of the electronic devices contain data or communications generated only after the TRO was entered and which consist of valid individual attorney-client communications, such communications must be walled off from review, and production of the devices would not constitute a waiver of any such valid individual attorney-client communications.  Reply at 5 n.8 [ECF No. 129].

a written account, the act of preparation serves as an effective waiver of the Fifth Amendment protections, and the resulting document is a physical object that can be acquired.  In this instance, the Receiver is seeking the production of business records that were voluntarily prepared prior to the entry of the TRO.  Pillonato and Ramsey, therefore, do not enjoy any Fifth Amendment protection in the content of these business records.

Ramsey and Pillonato appear to suggest that their very act of production – their turning over the devices to the Receiver – would be testimonial in nature.  The Eleventh Circuit has described those circumstances in which the act of production would – and would not – have a testimonial quality sufficient to trigger the protections of the Fifth Amendment:

> [A]n act of production can be testimonial when that act conveys some explicit or implicit statement of fact that certain materials exist, are in the subpoenaed individual's possession or control, or are authentic. The touchstone of whether an act of production is testimonial is whether the government compels the individual to use "the contents of his own mind" to explicitly or implicitly communicate some statement of fact.
>
> Put another way, the Court has marked out two ways in which an act of production is not testimonial. First, the Fifth Amendment privilege is not triggered where the Government merely compels some physical act, i.e. where the individual is not called upon to make use of the contents of his or her mind. The most famous example is the key to the lock of a strongbox containing documents, but the Court has also used this rationale in a variety of other contexts. Second, under the "foregone conclusion" doctrine, an act of production is not testimonial—even if the act conveys a fact regarding the existence or location, possession, or authenticity of the subpoenaed materials—if the Government can show with "reasonable particularity" that, at the time it sought to compel the act of production, it already knew of the materials, thereby making any testimonial aspect a "foregone conclusion."

In re Grand Jury Subpoena, 670 F.3d at 1345–46.

In this matter, Pillonato and Ramsey's act of producing the devices – their compliance with the Court's order directing that they turn over the devices to the Receiver

– is not a question of testimony but of surrender.  See Fisher, 425 U.S. at 411 ("Where the existence and location of the subpoenaed documents are a 'foregone conclusion' and the witness 'adds little or nothing' by conceding he has the documents, there is no Fifth Amendment privilege against production because the production becomes a 'question . . . not of testimony but of surrender.'").  Further, the act of producing these devices does not require Pillonato and Ramsey to reveal the contents of their minds or to exercise any judgment or discretion to comply with the requests; they are merely surrendering the laptops and cellphones to the Receiver as required by the Court's Order.

The district court's opinion in Sallah v. Worldwide Clearing LLC, 855 F. Supp. 2d 1364 (S.D. Fla. 2012) (Rosenbaum, D.J.) is instructive.  In Sallah, the court held that a defendant's act of producing of certain documents did not violate her Fifth Amendment privilege against self-incrimination.  The defendant had objected to several requests for production on Fifth Amendment grounds.  The court interpreted "the contents of his own mind" to mean an exercise of discretion and decision-making and overruled the defendant's objection on the ground that neither the production of tax records nor of the contracts required the defendant to make any judgment calls or exercise discretion in determining what is responsive to the request.  Id. at 1374.

In sum, because the information on the electronic devices was voluntarily created prior to the Receiver's request for turnover and because compliance with the turnover order does not require that Ramsey and Pillonato exercise any judgment or discretion, their surrender of the devices is not a testimonial communication for which they can successfully invoke a Fifth Amendment objection.

B.    Fourth Amendment Claims

Ramsey and Pillonato additionally raise a Fourth Amendment objection to turning over their electronic devices.  They assert that the Receiver has sought a court order to force them to turn over their personal cellphones and laptop computers so that he can then conduct a warrantless and illegal search and seizure of the information contained therein. Objections at 8-9 [ECF No. 108].  Ramsey and Pillonato assert that they have a reasonable expectation of privacy in these personal devices, which gives them standing to contest the search and seizure.  Id. at 9.  Ramsey and Pillonato reason that a warrant or a showing of probable cause is therefore required to seize and download the content of their devices. They argue that such a showing has not been made.

The Receiver argues that Pillonato and Ramsey have waived their right to even raise a Fourth Amendment claim, that they would not have standing to assert such a claim, and that, in any event, probable cause has been established to seize and search these devices.

1.    Waiver

The Receiver first argues that Ramsey and Pillonato waived their right to raise a Fourth Amendment claim by not doing so during the hearing on the Preliminary Injunction. On June 6, 2018, the Court held an evidentiary hearing on the Preliminary Injunction, and Defendants were given the opportunity to present evidence and argument contesting its entry and scope.  According to the Receiver, Ramsey and Pillonato failed to object to the entry of the Preliminary Injunction, which includes the turnover of "[a]ll computers, electronic devices, mobile devices, and machines used to conduct the business of the Receivership entities . . . ." Section XV. Preliminary Injunction [ECF No. 64].  In their

11

Objection, Ramsey and Pillonato now collaterally attack as Fourth Amendment violations the very provisions of the Preliminary Injunction to which they had previously failed to object.  According to the Receiver, this belated invocation of the Fourth Amendment to prevent the turnover of the electronic devices is untimely.  The Receiver argues that Pillonato and Ramsey have waived any Fourth Amendment claim, and on that basis alone their claim should fail.  In support of this argument, the Receiver relies on FTC v. Credit Bureau Ctr., LLC, 284 F. Supp. 3d 907, 909 (N.D. Ill. 2018).

In Credit Bureau, the court was confronted with Fourth Amendment arguments similar to those raised by Ramsey and Pillonato. There, the FTC had obtained a preliminary injunction against the defendants (a limited liability company and individuals) for alleged violations of the Federal Trade Commission Act and other federal statutes. Id. at 908.  After the injunction had been entered, two of the Credit Bureau defendants argued, inter alia, "that the seizure or required turnover of their documents and electronic records, as well as passwords, [to the government] violates the Fourth Amendment. . . ." Id. at 909. The district court rejected the defendants Fourth Amendment assertions, stating that the "[d]efendants have forfeited this argument on multiple occasions, including by their failure to object to use of these materials during the preliminary injunction hearing and their failure to object to the terms of the preliminary injunction on this basis." Id.  Here, the Receiver contends that because Defendants failed to object to the applicable terms of the Preliminary Injunction, including the provisions requiring the turnover of the electronic devices, Pillonato and Ramsey (like the defendants in Credit Bureau) similarly waived any Fourth Amendment claim as to these devices.

The undersigned has reviewed the transcript of the Preliminary Injunction hearing. [ECF No. 117]. The Receiver is correct in asserting that Ramsey and Pillonato did not expressly identity the "Fourth Amendment" as a basis for their objections to the turnover. They expressly identified only the "Fifth Amendment." [ECF No. 117 pp. 59, 63]. Yet, counsel for Ramsey and Pillonato was unequivocal in stating that the devices were "their cell phones" and "their laptops" – "not corporate cell phones" and "not corporate laptops" – and therefore "in order to search a cell phone, I know, you need a search warrant. In order to search a computer, you need a search warrant." [ECF No. 117 p. 63]. By arguing to the District Court that the electronic devices were personal to Ramsey and Pillonato and that a warrant was therefore required to search their contents, counsel for Ramsey and Pillonato was (by clear implication) raising a Fourth Amendment objection to the turnover order. Accordingly, the undersigned declines to conclude that Ramsey and Pillonato waived their Fourth Amendment claim.

2.   Standing

At the hearing conducted before the undersigned, the Receiver argued that Ramsey and Pillonato lack standing to assert a Fourth Amendment claim because they failed to claim ownership of the electronic devices in financial affidavits completed earlier in this litigation and, despite representations that they would do so, never amended those affidavits to reflect the claimed ownership.

Ramsey and Pillonato counter that they not only had purchased the electronic devices with their own funds but that they have continually asserted this position throughout the litigation, including (through counsel) at the Preliminary Injunction hearing. Furthermore, they argue that irrespective of the party that made the purchase, they have

13

established an undeniable possessory interest in these devices – they have taken them home and have been using them as their own – that gives rise to a reasonable expectation of privacy.

In United States v. Medina, 158 F. Supp. 3d 1303 (S.D. Fla. 2015) (Altonaga, J.), this Court articulated the law as to Fourth Amendment standing claims:

> A defendant challenging the legality of a search bears the burden of showing he has standing by proving he possessed an objectively reasonable expectation of privacy in the area searched or items seized. To establish a reasonable expectation of privacy, the defendant must manifest a subjective expectation of privacy in the items searched or seized, and society must be prepared to recognize that expectation as legitimate or objectively reasonable. In other words, a defendant must establish both a subjective and an objective expectation of privacy. The subjective prong is a factual inquiry, requiring a person exhibit an actual expectation of privacy, . . . The objective prong is a question of law.
>
> Determining the legitimacy of a privacy expectation entails a balancing of interests; no single factor is determinative. Factors courts generally consider include property ownership, whether the defendant has a possessory interest in the things seized or place searched, whether the defendant has the right to exclude others from the place, whether he has exhibited a subjective expectation the place would remain free from governmental invasion, whether he took precautions to maintain his privacy, and whether he was legitimately on the premises.

Id. at 1308 (internal citations omitted).

Although the Receiver notes Ramsey and Pillonato's failure to list these devices on their financial affidavits, the record is clear that they have consistently asserted that these are personal devices that they purchased with their personal funds; and the Receiver has not suggested evidence to the contrary. Moreover, these were devices that Ramsey and Pillonato had been keeping in their personal possession and, indeed, had with them inside the Ramsey residence when they were served with the TRO demanding their turnover; they instead fled with the devices. Furthermore, according to the Receiver's own

allegations, Ramsey and Pillonato had actually been utilizing these devices for business purposes.  Indeed, taking the Receiver's allegations (set forth more fully below) as true, Pillonato and Ramsey had been utilizing their cell phones to send and/or receive thousands of text messages.  The undersigned, therefore, finds that Ramsey and Pillonato manifested a subjective expectation of privacy in their laptop computers and cell phones and that in light of their strong possessory – if not ownership – interest in the electronic devices, society is prepared to recognize their expectation as legitimate or objectively reasonable.  Accordingly, the undersigned concludes that Ramsey and Pillonato have standing to raise a Fourth Amendment claim.

3.   <u>Probable Cause</u>

Ramsey and Pillonato argue because they enjoy a reasonable expectation of privacy in their electronic devices, the Receiver cannot seize and search – that is, download the content of – their electronic devices without a search warrant or, in this context, a showing of probable cause.  The Receiver counters that even if Ramsey and Pillonato had standing to assert a Fourth Amendment claim, the District Court has already been presented with sufficient probable cause to support a turnover and search (download) of these electronic devices.

The Fourth Amendment to the United States Constitution states:

> The right of people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV.  The Supreme Court has made clear that "[p]robable cause is not a high bar."  District of Columbia v. Wesby, 138 S. Ct. 577, 586 (2018) (citations and internal quotations omitted).  "It requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." Id.  (citations and internal quotations omitted); accord Illinois v. Gates, 462 U.S. 213, 238 (1983) (stating that probable cause will be found to support a warrant application when "there is a fair probability that contraband or evidence of a crime will be found in a particular place") .  In Gates, the Supreme Court explained that "probable cause deals 'with probabilities.  These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'" Id. at 241 (citation omitted).

Although Fourth Amendment claims typically arise in criminal proceedings, the Supreme Court has made clear that the Amendment's protections against unreasonable searches and seizures extend to civil matters as well.  Soldal v. Cook, County, Illinois, 506 U.S. 56, 67 (1992).  Although still measured against the standards of probable cause, in the civil context, reasonableness is assessed less stringently than in a criminal context. Paramount Pictures Corp. v. Twentieth Century Fox Film Corp., 821 F. Supp. 82, 90 (E.D.N.Y.1993); see also Nixon v. Administrator of General Services, 408 F. Supp. 321, 366 (D.D.C.1976) (stating "there is considerable authority for the proposition that a less strict and particularized government showing is necessary to comply with the Fourth Amendment's reasonableness requirement when the search is entirely 'civil' in nature") (citations omitted). "Although notions of probable cause and specificity guide courts in the determination of the overall reasonableness of a civil search, they do not apply strictly in

the case of an administrative or civil order of seizure." <u>Owens v. Swan</u>, 962 F. Supp. 1436, 1440 (D. Utah 1997) (citations omitted).

The record here shows that in support of its request for a TRO, the FTC submitted 31 declarations from consumers (22), Google (3), investigators (2), a data analyst, a forensic accountant, and an informant who worked at the Receivership Defendants.  [ECF Nos. 5 and 14].   And in support of its request for a Preliminary Injunction, the FTC submitted three (3) more declarations.  [ECF No. 53].  In addition, the FTC submitted substantial legal briefs supported by competent evidence, including audio and video files, which Defendants did not contest.  Indeed, Defendants did not file any declarations in response.

In entering its Preliminary Injunction, the District Court made the following Findings of Fact as to Defendants, including Ramsey and Pillonato:

> B. In numerous instances, Defendants falsely claimed an affiliation with Google, threatened businesses with removal from Google's search engine, promised small businesses unique keywords for which they would appear prominently in search results, and guaranteed first-place or first-page placement in Google search results.
>
> C. There is good cause to believe Defendants have engaged in and are likely to engage in acts or practices that violate section 5(a) of the FTC Act, see 15 U.S.C. § 45(a), and that the FTC is therefore likely to prevail on the merits

of this action. As demonstrated by Defendants' business records; Defendants' banking and payment processing records; declarations/testimony from a Google employee; consumer declarations/testimony; transcripts of calls; records of undercover calls and an undercover purchase; and the additional documentation filed by the FTC, the FTC has established a likelihood of success in showing that Defendants (1) used false claims of affiliation with Google, false threats of removal from Google, and false promises of prominent placement in search results to sell Google listing and search engine optimization services; and (2) without authorization, took money from consumers' bank accounts.

Preliminary Injunction at 4 [ECF No. 64].  As the district court stated in <u>Credit Bureau</u> <u>Center</u>, "the evidence submitted in support of the temporary restraining order and the

preliminary injunction was more than sufficient to establish probable cause authorizing the Court's entry of an order permitting seizure or turnover of the materials in question." 284 F. Supp. 3d at 909.[5]  As one state appellate court recently explained, the entry of the preliminary injunction after notice and a hearing establishes that the plaintiff(s) had a likelihood of success on the merits and, thus, that the initiation of the action was supported by probable cause. Impey v. Clithero, 2018 WL 1914845, at *8 (Mo. App. W.D. 2018). Here, the ample evidence of Defendants' fraud offered in support of the Preliminary Injunction, which evidence went uncontested, was more than sufficient to satisfy the probable cause standard. See Wesby, 138 S. Ct. at 586 (stating that probable cause "is not a high bar"). Furthermore, that same evidence more than satisfies the less stringent standards of reasonableness that govern civil cases. See Owens, 962 F. Supp. at 1440.

Ramsey and Pillonato argue that even if there were probable cause to believe that Defendants engaged in fraudulent activity, there has been no showing of probable cause

---

[5] The undersigned notes that some courts have taken the position that a preliminary injunction is at least prima facie evidence of probable cause. See, e.g., Salvage Process Corp. v. Acme Tank Cleaning Process Corp., 104 F.2d 105, 107 (2d Cir. 1939), cert. denied, 308 U.S. 599 (1939) ("The granting of a preliminary injunction upon notice to opposing parties, even though reversed on appeal, is at least [prima facie] evidence of probable cause." (citations omitted)); Burt v. Smith, 181 N.Y. 1, 73 N.E. 495, 496-97 (1905) (noting that an injunction order is "temporary and provisional . . . to hold matters in statu[s] quo" and requires only "a [prima facie] case," thus concluding that "it is only [prima facie] evidence of probable cause"). Other courts, however, have held that a preliminary injunction entered after a hearing is conclusive evidence of probable cause. See, e.g., Paiva v. Nichols, 168 Cal. App.4th 1007, 85 Cal. Rptr. 3d 838, 850-51 (2008) (noting that a defendant can negate the absence of probable cause "by showing that an interim victory in the underlying case—such as the granting of a preliminary injunction in favor of the malicious prosecution defendant (the plaintiff in the prior case)—established probable cause" (citation omitted) ); H.P. Rieger & Co. v. Knight, 97 A. 358, 361 (Md. 1916) ("The granting of the injunction [after the court is fully informed by proof taken and argument on both sides is] conclusive of probable cause, and hence prevents recovery for malicious prosecution[.]").

to believe that evidence of that fraud is contained on their electronic devices.   The undersigned does not agree.

Preliminarily, the undersigned notes that in the TRO, the District Court made the same findings that it did in the Preliminary Injunction.  TRO at 2 [ECF No. 12].  And in that TRO, the Court ordered Defendants, including Ramsey and Pillonato, to turnover any electronic devices in their possession containing business records of Receivership Entities:

> If any Documents, computers, or electronic storage devices containing information related to the business practices or finances of the Receivership Entities are at a location other than those listed herein, including personal residence(s) of any Defendant, then, immediately upon receiving notice of this order, Defendants and Receivership Entities shall produce to the Receiver all such Documents, computers, and electronic storage devices, along with any codes or passwords needed for access.

TRO at 24 [ECF No. 12].  The TRO, therefore, clearly contemplated that business records of the Receivership Entities would be found on computers and electronic storage devices at Defendants' personal residences, irrespective of whom may have purchased those devices, and it directed that such devices be turned over to the Receiver.

Moreover, the Receiver has articulated probable cause to believe that the laptops at issue contain information related to the Receivership Entities.  First, the Receiver notes that Ramsey and Pillonato, both of whom are principals of the Receivership Entities, have never denied – at the Preliminary Injunction hearing or elsewhere – that their laptop computers contain business records of these Entities.   Indeed, given the realities of running a modern business – in this instance, a digital or internet business – logic would dictate that there is at least a "fair probability" that principals of such a business would have records of their business activity not only on their personal cellphones (a fact that forensic examinations have now established), but also on their personal laptop computers.  Were

there any doubt that the laptops contained business records of the Receivership Entities, Ramsey and Pillonato seemingly removed that doubt by immediately fleeing from Ramsey's residence with the laptops upon being served with the TRO commanding that they turn over the laptops to the Receiver.[6]   The Receiver, in turn, was seeking to image the laptops to preserve the data as required by the Court's order.

The Receiver additionally argues that Ramsey and Pillonato used their cell phones, much like they used their laptops, to conduct business activity.  According to the Receiver, their use of the cell phones for Receivership business activity is confirmed by digital forensic examinations.  More specifically, the Receiver examined the cell phone belonging to Defendant Ricardo Diaz, who had voluntarily surrendered his cell phone to the Receiver

---

[6] The Receiver recounted the events that unfolded when the FTC's process server, Ivan Lopez, sought to serve Pillonato and Ramsey with the FTC's Complaint and the Court's TRO:

> On May 9, 2018 at approximately 10:30 a.m., Lopez served Defendants Pillonato and Ramsey at Ramsey's home at 19149 Skyridge Circle, Boca Raton, Florida. Minutes after they were served, Pillonato, Ramsey and a third unidentified man ran out of the house and fled in a red Range Rover. Lopez observed that the unidentified man was carrying two unzipped laptop computer bags on his right shoulder with a visible laptop inside each bag and three Louis Vuitton backpacks (that are property of the Receivership estate) on his right forearm. Lopez later reported to the Receiver that Ramsey drove off the property "like a bat out of hell."

> On May 11, 2018, Defendants' attorney Mitchell Roth wrote to the Receiver admitting that the laptop computer bags seen by Lopez did in fact contain laptops. However, his clients refused to turn over the laptops to the Receiver because they were purportedly purchased by the Defendants individually, but at the same time conceded that the laptops "may potentially have incriminating evidence." Notably, Mr. Roth did not deny that the laptops contained information relating to the Corporate Defendants.

Motion to Compel Turnover at 5-6 (footnote and internal citations omitted) [ECF No. 49].

and consented to the device being imaged and searched.  Reply at 13 [ECF No. 129].  The data extraction confirms that from December 1, 2016, to February 26, 2018, a total of 2,976 text messages were exchanged between Ramsey and Diaz and that from December 14, 2016, to April 11, 2018, a total of 1,235 text messages were exchanged between Pillonato and Diaz.  The Receiver represents that his cursory review of the texts confirms that the overwhelming majority of the 4,202 exchanged text messages concern the business operations of the Receivership Entities.  By way of example:

> Between Diaz and Ramsey –
>
> "But if dustin [sic] and I can't make a profit no one can" (no. 202);
> "Ricardo how many total deals we do last week" (no. 574);
> "We make 100k a month" (no. 795); and
> "Next week we are Pointbreak" (no. 957).
>
> Between Diaz and Pillonato –
>
> Numerous texts regarding "chargebacks" (nos. 67, 226, 227, 230, 426, 479, 740); Numerous texts regarding "upsells" (nos. 295,454,593); and "first time in point break google history where an office lot [sic] money" (no. 673).

Id.  That Pillonato and Ramsey extensively used their personal cell phones to conduct business activity lends further support to the Receiver's contention that they similarly used their personal laptops to conduct business activity.

In sum, viewing the evidence in its totality, there exists here more than a fair probability that evidence of the business operations of the Receivership Entities will be found on the laptop computers and cell phones currently in the possession of the Clerk of the Court.  The undersigned, therefore, concludes that on the record before this Court there is sufficient probable cause to order the turnover and search (download) of the

electronic devices in the custody of the Clerk and that such an order would satisfy the Fourth Amendment's requirement of reasonableness.

III.     CONCLUSION

Pillonato and Ramsey's Fifth Amendment claims fail as they voluntarily prepared any business records before they were demanded by the Receiver and their act of producing them would not be testimonial.  Pillonato and Ramsey's Fourth Amendment claims fail as probable cause has been established to seize and search (download) the content of the laptop computers and cell phones currently in the custody of the Clerk of the Court, and on this record the order directing that seizure and search would satisfy the Fourth Amendment's requirement of reasonableness.

Accordingly, the undersigned respectfully RECOMMENDS that Defendants Dustin Pillonato and Justin Ramsey's Response and Objections to Receiver's Motion to Compel Turnover of Personal Laptop Computers and Personal Cell Phones [ECF No. 108] be OVERRULED and that the laptop computers and cell phones in the custody of the Clerk of the Court be turned over to the Receiver, who shall be permitted to conduct a search (download) of its contents for evidence of the business operations of the Receivership Entities.

The parties will have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with the Honorable Cecilia M. Altonaga, United States District Judge.  Failure to file objections timely shall bar the parties from a de novo determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report except upon grounds of plain error

if necessary in the interest of justice.  See 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140, 149 (1985); Henley v. Johnson, 885 F.2d 790, 794 (1989); 11th Cir. R. 3-1 (2016).

DONE and SUBMITTED at Fort Lauderdale, Florida this 12th day of September 2018.

BARRY S. SELTZER
United States Magistrate Judge


Copies furnished via CM/ECF to:

Honorable Cecilia M. Altonaga
United States District Judge

All counsel of record