UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 18-61017-CIV-ALTONAGA/McAliley

FEDERAL TRADE COMMISSION,

      Plaintiff,

v.

POINTBREAK MEDIA, LLC; *et al.*,

      Defendants.

_____/

## ORDER

On March 11, 2019, Magistrate Judge McAliley entered a Report [ECF No. 251] on Plaintiff, Federal Trade Commission's Motion for Summary Judgment [ECF No. 228].  Judge McAliley recommends the Court grant Plaintiff's Motion and enter a permanent injunction against *pro se* Defendants, Dustin Pillonato and Justin Ramsey.  (*See* Report 32–33).  On March 18, 2019, Defendants timely filed their Objections [ECF No. 253] to the Report.  Plaintiff filed its Response to Defendants' Objections [ECF No. 255] ("Pl.'s Resp. to Objs.") on March 21, 2019.

When a magistrate judge's "disposition" has properly been objected to, as is the case here, district courts must review the disposition *de novo*.  Fed. R. Civ. P. 72(b)(3).  Defendants timely filed objections to the Report (*see generally* Objs.), and so the Court reviews the record *de novo*.  The Court has carefully reviewed the parties' written submissions, the record, and applicable law.  For the following reasons, Judge McAliley's Report is affirmed, and Plaintiff's Motion for Summary Judgment is granted.

## I.    BACKGROUND

The Report details the relevant facts.  (*See* Report 2–15).  Judge McAliley relies on Plaintiff's Statement of Undisputed Material Facts [ECF No. 229] ("Pl.'s SOF"), as Defendants

CASE NO. 18-61017-CIV-ALTONAGA/McAliley

failed to file their own statement of material facts.  (*See* Report 3 (citing cases)).  The Court agrees

and fully adopts Plaintiff's facts here.  Given Defendants' status as *pro se* litigants, however, the

Court also considers all evidence Defendants reference in their briefing.

For brevity, the undersigned outlines the general nature of the case, reserving specific

reference to the evidence in her analysis below.  The dispute involves Plaintiff's allegations against

various companies and their principals for deceptive representations, unfair billing practices, and

abusive telemarketing practices.  (*See generally* First Amended Complaint [ECF No. 109]).  Every

Defendant in the case, other than Pillonato and Ramsey, as principals of Pointbreak Media, LLC

and Modern Source Media LLC (*see id.* ¶¶ 16–17), has either settled or has defaulted.

Plaintiff asks the Court to enter summary judgment, a permanent injunction, and a money

judgment for $3,367,666.30, jointly and severally, against Pillonato and Ramsey.

(*See generally* Mot.).  Plaintiff moves for summary judgment on all claims for which Pillonato and

Ramsey are named as Defendants: (1) Section 5(a) of the FTC act for alleged misrepresentations

to induce consumers to purchase "claiming and verifying" and Citation Program services under

both a personal liability and common enterprise theory (Count I) (Am. Compl. ¶¶ 208–10); (2)

Section 5(a) of the FTC Act for Pointbreak Media's unfair billing practices (Count II) (*see id.* ¶¶

211–13); and (3) Telemarketing Sales Rule ("TSR"), 16 C.F.R. section 310.4(b), arising from

Pointbreak Media's initiation of unlawful prerecorded messages and robocalls to numbers on the

National Do Not Call Registry (Counts III and IV) (*see id.* ¶¶ 224–27).

The parties have completed extensive briefing.  In all, Plaintiff filed its Motion, Reply

[ECF No. 241], and Response to Defendants' Objections.  Defendants filed a Response [ECF No.

234], Surreply [ECF No. 244], and their Objections to the Report.   Plaintiff's Motion is ripe for

review.

## II.   ANALYSIS

In her Report, Judge McAliley thoughtfully addresses every argument Defendants raise in opposition to Plaintiff's Motion.  (*See* Report 17–28).  The Magistrate Judge also references the arguments in Plaintiff's Motion that Defendants do not challenge.  (*See generally id.*).  Having had the benefit of reviewing Defendants' Objections, the undersigned addresses the merits of Plaintiff's Motion by evaluating the four claims against Pillonato and Ramsey.  The Court concludes by addressing, and ultimately rejecting, Defendants' remaining objections.

### A.  Count I

In Count I, Plaintiff alleges Pillonato and Ramsey made false, misleading, and unsubstantiated representations, in violation of Section 5(a) of the FTC Act. (*See* Am. Compl. ¶ 210).  Section 5 prohibits "unfair or deceptive acts or practices in or affecting commerce."  15 U.S.C. § 45(a)(1).  To establish a violation of Section 5, Plaintiff must prove: "(1) there was a representation, (2) the representation was likely to mislead customers acting reasonably under the circumstances, and (3) the representation was material."  *F.T.C. v. Tashman*, 318 F.3d 1273, 1277 (11th Cir. 2003) (citations omitted).

Plaintiff has established all the elements of a claim under Section 5(a) as a matter of law. (*See* Report 17).  Defendants have not challenged this conclusion in either their briefing before or after the Report.  (*See generally* Resp.; Surreply; Objs.).  The Court has independently reviewed the evidence and agrees there is no genuine dispute of material fact that Pointbreak Media's robocalls and live sales agent calls violated Section 5(a).  In so doing, the undersigned fully adopts the Report's analysis on Count I here.  (*See* Report 17–19).

But the Court's analysis does not stop there, for Plaintiff asks the Court to hold Pillonato and Ramsey liable *for the conduct of Co-Defendants*, Modern Spotlight LLC, Modern Spotlight

CASE NO. 18-61017-CIV-ALTONAGA/McAliley

Group LLC, Perfect Image Online LLC, National Business Listings LLC, and DCP Marketing LLC (the "Co-Defendants") under a common enterprise theory. (*See id.* 19–22). Plaintiff also asks the Court to find Pillonato and Ramsey liable for the conduct of the Co-Defendants under a personal liability theory. (*See id.* 22–25). The Court addresses both theories of liability in turn.

      i.        *Common Enterprise Liability*

The Court first turns to common enterprise liability. "When a common enterprise exists, each corporation may be held liable for the others' violations." *F.T.C. v. Life Mgmt. Servs. of Orange Cty., LLC*, 350 F. Supp. 3d 1246, 1257 (M.D. Fla. 2018) (citation omitted).

Pillonato and Ramsey do not dispute that Modern Source Media, Perfect Image Online, National Business Listings, and DCP Marketing, along with Pointbreak Media, were part of a common enterprise. (*See generally* Resp., Surreply; Objs.). After reviewing the record and applicable law, the Court agrees that Modern Source Media, Perfect Image Online, National Business Listings, DCP Marketing, and Pointbreak Media were part of a common enterprise. (*See* Report 19–22).

Defendants only dispute the Magistrate Judge's conclusion that Modern Spotlight and Modern Spotlight Group (the "Modern Spotlight Defendants") are also part of the common enterprise. (*See* Resp. 1–4; Surreply 1–2; Objs. ¶ 1). In support, Defendants supply the Declaration of Michael Pocker, another Defendant in the case and the principal of the Modern Spotlight Defendants. (*See* Resp. 10–14).

Mr. Pocker's statement reflects that the Modern Spotlight Defendants *traded* office space and Modern Spotlight *subleased* office space from Pointbreak Media. (*See id.*). Mr. Pocker also states while some employees worked for both Pointbreak Media and the Modern Spotlight Defendants, no employees worked for the entities simultaneously. (*See id.*). To Defendants, this

4

declaration creates an issue of material fact whether the Modern Spotlight Defendants were part of the common enterprise.  (*See id.*).  The Court disagrees.

Under the FTC Act, "a corporate entity can be held liable for the conduct of other entities where the structure, organization, and pattern of a business venture reveal a common enterprise or a maze of integrated business entities."  *F.T.C. v. Lanier Law, LLC*, 715 F. App'x 970, 979 (11th Cir. 2017) (internal quotation marks and citation omitted).  In determining if a common enterprise exists, courts consider whether the businesses "share office spaces and employees, commingle funds, coordinate advertising efforts, and operate under common control."  *Id.*  (citation omitted). While courts are expected to weigh these factors, they are primarily tasked with evaluating the "pattern and frame-work of the whole enterprise."  *F.T.C. v. HES Merch. Servs. Co.*, No. 6:12-cv-1618-Orl-22KRS, 2014 WL 6863506, at *5 (M.D. Fla. Nov. 18, 2014), *aff'd*, 652 F. App'x 837 (11th Cir. 2016) (internal quotation marks and citation omitted).

The Report describes the extensive cooperation between the Modern Spotlight Defendants and Pointbreak Media and Modern Source Media to induce customers to purchase their services. (*See* Report 19–21).  For example, the companies shared client data.  Modern Spotlight Group sold its claiming and verification customer leads exclusively to Modern Source Media; and Modern Source Media sold its Citation Program services exclusively to Modern Spotlight Group customers.  (*See* Pl.'s SOF ¶¶ 56, 58).  Modern Spotlight Group also scheduled Citation Program sales calls for Modern Source Media; and Modern Source Media provided phone numbers to Modern Spotlight Group, which placed claiming and verification robocalls to those numbers. (*See* Declaration of Michael Pocker [ECF No. 229-111] ¶ 57; *see also* Supplemental Declaration of Michael Pocker [ECF No. 241-2] ¶ 4).  Tellingly, Modern Source Media's own employees do not distinguish between Modern Source Media and Modern Spotlight Group, telling consumers

CASE NO. 18-61017-CIV-ALTONAGA/McAliley

the companies were a single business.  (*See* Pl.'s Resp. to Objs. 3–4).  Ramsey acknowledged that Pointbreak Media was completely dependent on Modern Spotlight Group for its survival.  (*See* December 14, 2017 E-mail from Ramsey to Pillonato [ECF No. 229-59] 3 (stating "all . . . we have . . . "[r]ight now its [sic] pocker and pocker only." (alterations added))).

The Report also highlights the following undisputed evidence, which in the aggregate, most certainly shows a common enterprise existed between Pointbreak Media and the Modern Spotlight Defendants: 1) Pointbreak Media and Modern Spotlight shared a credit card merchant account; (2) Pointbreak Media and the Modern Spotlight Defendants used similar robocall and live sales agent scripts; (3) Pocker, Pillonato, and Ramsey discussed the companies' sales scripts with each other; (4) Pointbreak Media's office space and employees became Modern Spotlight Group's offices and employees; and (5) Modern Spotlight Group used similar customer contracts and welcome emails as Pointbreak Media.  (*See* Report 20–21 (citing Pl.'s SOF ¶¶ 5, 7, 14, 15, 27, 28, 29)).  These "undisputed facts demonstrate that the [Modern Spotlight Defendants] operated as part of a common enterprise with the other Corporate Defendants."  *F.T.C. v. Johnson*, 156 F. Supp. 3d 1202, 1208 (D. Nev. 2015) (alteration added) (entering summary judgment for the FTC and finding common enterprise liability existed where entities commingled funds and coordinated their sales efforts).

Despite this compelling, conclusive, and indisputable record evidence, Defendants ask the Court to consider, in rigid form, the factors of shared office space, shared employees, and common control.  (*See* Objs. ¶ 2).  The crux of Defendants' argument is that a triable issue of fact exists on the question of common enterprise liability because Pointbreak Media and the Modern Spotlight Defendants did not *simultaneously* share employees and office space.  This argument fails to persuade.

CASE NO. 18-61017-CIV-ALTONAGA/McAliley

*F.T.C. v. Life Management Services of Orange County, LLC*, 350 F. Supp. 3d 1246 (M.D. Fla. 2018), is instructive.  There, the court was similarly tasked with determining whether common enterprise liability existed between two companies, Loyal and LMS.  *See id.* at 1257–58.  The indisputable record evidence overwhelmingly supported a common enterprise finding, including a shared merchant account and LMS submitting identical scripts and documents as Loyal.  *See id.* at 1258.  That the companies' addresses were "overlapping" although not identical did not alter the court's conclusion that the evidence was so one-sided for the FTC to prevail on summary judgment.  *Id.*  (footnote call number and citations omitted).

So, too, here the undisputed material facts dictate summary judgment in Plaintiff's favor on the question of common enterprise liability.  Contrary to Defendants' insistence, common enterprise liability does not require a finding of *contemporaneous* shared employees and office space.  Plaintiff need not "prove any particular number of entity connections" or "any specific connection."  *F.T.C v. Kennedy*, 574 F. Supp. 2d 714, 722 (S.D. Tex. 2008).  Rather, Plaintiff must show that Pointbreak Media and the Modern Spotlight Defendants "maintained an unholy alliance."  *Id.* (internal quotation marks and citation omitted).  This, Plaintiff has done.  Because Mr. Pocker's Declaration "is insufficient evidence 'for a jury to return a verdict' in [Defendants'] favor" on the question of common enterprise, "summary judgment [is] appropriate."  *Lanier Law, LLC*, 715 F. App'x at 980 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249) (alterations added).

Given that the Modern Spotlight Defendants are part of the common enterprise, Pointbreak Media and Modern Source Media are liable for the Modern Spotlight Defendants' deceptive sales. Ramsey and Pillonato, as principals of Pointbreak Media and Modern Source Media, are therefore liable for the entire common enterprise's wrongdoing.

CASE NO. 18-61017-CIV-ALTONAGA/McAliley

     *ii.*      *Personal Liability*

Plaintiff also asks the Court to impose liability on Pillonato and Ramsey through a personal liability theory.  (*See generally* Mot.).  For the Court to impose personal liability, Plaintiff "must first show that the corporation committed violations of those acts for which it is liable." *F.T.C. v. Primary Grp., Inc.*, 713 F. App'x 805, 806–07 (11th Cir. 2017) (per curiam) (citation and footnote call number omitted).  Once corporate liability is established, Plaintiff must then show "the individual knew of the deceptive practices and either participated directly in those practices or had the authority to control them." *Id.* at 807 (quoting *F.T.C. v. IAB Mktg. Assocs., LP*, 746 F.3d 1228, 1233 (11th Cir. 2014)).  The Eleventh Circuit recently explained that "knowledge may be established by showing that the individual had actual knowledge of the deceptive conduct, was recklessly indifferent to its deceptiveness, or had an awareness of a high probability of deceptiveness and intentionally avoided learning of the truth." *Id.* (internal quotation marks and citations omitted).

Defendants initially contested a finding of personal liability with respect to the Modern Spotlight Defendants' deceptive sales, focusing on the "control" element of the personal liability inquiry.  (*See* Resp. 3).  But Pillonato and Ramsey *are* personally liable for the Modern Spotlight Defendants' deceptive sales because they *directly participated* in the deceptive sales practices. Indeed, Pillonato and Ramsey (1) provided phone numbers for the Modern Spotlight Defendants to robocall and a merchant account for them to use; (2) shared welcome emails and contracts with them; and (3) coordinated with the Modern Spotlight Defendants on how to transfer customers to Modern Source Media.  (*See* Pl.'s SOF ¶¶ 27, 29; *see also* Supplemental Declaration of Michael Pocker ¶¶ 4, 6, 9–10).  As Plaintiff points out, day-to-day involvement of the Modern Spotlight Defendants' activities is unnecessary to establish direct participation.  (*See* Pl.'s Resp. to Objs. 7).

CASE NO. 18-61017-CIV-ALTONAGA/McAliley

Where individuals obtained merchant bank accounts for an entity, as Pillonato and Ramsey did for Modern Spotlight (*see* Pl.'s SOF ¶ 27), they directly participated in the entity's wrongdoing. *See F.T.C. v. J.L. Publ'ns, Inc.*, 99 F. Supp. 2d 1176, 1206 (C.D. Cal. 2000). Plaintiff has established that Pillonato and Ramsey directly participated in the Modern Spotlight Defendants' deceptive sales practices as a matter of law.

In their briefing since the Report, Defendants no longer challenge the indisputable evidence that they either participated directly in deceptive sales practices (in the case of some members of the common enterprise like the Modern Spotlight Defendants) or had the authority to control them. Nor could they. (*See* Report 22–23).

Instead, Pillonato and Ramsey now argue a triable issue of fact exists on the knowledge element of the personal liability inquiry. (*See* Objs. ¶ 7). Specifically, Defendants insist they could not have known of the other entities' deceptive practices when they opposed all illegal activities and instructed employees to not mislead customers into thinking Pointbreak Media and Google were one and the same. (*See id.*). In support, Defendants supply Pointbreak Media's co-owner, Beau Strickland's testimony, stating Ramsey and Pillonato opposed all illegal activities. (*See id.*).

The Court must again disagree with Defendants. Mr. Strickland's testimony amounts to a "mere scintilla of evidence" in the context of the entire record establishing Pillonato and Ramsey certainly had or *should have had* knowledge of Pointbreak Media's deceptive practices, as well as the deceptive practices of all the other entities. (Report 23–24 (citation omitted)).

Indeed, at a minimum, Pillonato and Ramsey should have known of the entities' (including the Modern Spotlight Defendants') deceptive sales practices. Even if Defendants' "protestations [they were] not aware of the content of the scripts, the texting, or any other illegal behavior" were

9

true, that would be "only because [they] intentionally avoided discovering [them] despite knowing that there was a high probability that [the entities were] engaging in" deceptive sales practices. *Primary Group, Inc.*, 713 F. App'x at 808 (internal quotation marks and citations omitted; alterations added). Plaintiff is therefore entitled to summary judgment on a personal liability theory. *See F.T.C. v. Williams, Scott & Assocs., LLC*, 679 F. App'x 836, 839 (11th Cir. 2017) (per curiam) (affirming summary judgment in favor of the FTC finding principal personally liable where the undisputed evidence supported the conclusion the individual "should have known about [the entity's] illegal activities." (alteration added)).

### B. Count II

Pillonato and Ramsey do not challenge the Magistrate Judge's findings as to Count II. (*See generally* Objs.). The undersigned has reviewed the Report, the record, and the applicable law. For the reasons discussed in detail in the Report, the Court agrees Plaintiff has established the absence of a triable issue of fact on the elements of a claim of unfair billing practices under Section 5(a) of the FTC Act. (*See* Report 25–26). Plaintiff is entitled to summary judgment against Pillonato and Ramsey on Count II.

### C. Counts III and IV

Counts III and IV involve allegations Pillonato and Ramsey violated the TSR. (*See* Am. Compl. ¶¶ 224–227). These claims arise from the robocalls Pointbreak Media made, including millions of calls to telephone numbers on the National Do Not Call Registry. The undisputed evidence supports, and Defendants do not dispute, that (1) Pointbreak Media was a telemarketer and a seller under the TSR; and (2) Pointbreak Media, with Pillonato and Ramsey's knowledge, initiated robocalls, including robocalls to telephone numbers on the National Do Not Call Registry. (*See* Report 27).

CASE NO. 18-61017-CIV-ALTONAGA/McAliley

In their initial briefing, Pillonato and Ramsey argued Pointbreak Media calls should benefit from the business-to-business exception. (*See* Resp. 6). The TSR exempts "[t]elephone calls between a telemarketer and any business to induce the purchase of goods or services . . . ." 16 C.F.R. § 310.6(b)(7) (alterations added). The Magistrate Judge correctly rejected Defendants' unsupported and conclusory assertion that any calls from Pointbreak Media received by non-businesses were made in error. (*See* Report 28). Even if this assertion were supported by the evidence, Defendants' subjective intentions are irrelevant, as the business-to-business exemption only applies to telephone calls *between* telemarketers and businesses. (*See id.* (citing *Inc21.com Corp.*, 745 F. Supp. 2d 975, 1007 (N.D. Cal. 2010))). Plaintiff thus prevails on summary judgment against Defendants on Counts III and IV.

### D. Miscellaneous Objections

Defendants' remaining objections all fail to persuade. First, contrary to Defendants' contention (*see* Objs. ¶ 6), the Magistrate Judge correctly recommended a proposed judgment of $3,367,666.30 against Pillonato and Ramsey. Under the FTC Act, "courts have justly imposed joint and several liability where a common enterprise exists." *F.T.C. v. WV Universal Mgmt., LLC*, 877 F.3d 1234, 1240 (11th Cir. 2017) (citation omitted). And "[i]f an individual may be held personally liable for corporate violations of the FTC Act . . . nothing more need be shown to justify imposition of joint and several liability for the corporation's restitution obligations." *F.T.C. v. Commerce Planet, Inc.*, 815 F.3d 593, 600 (9th Cir. 2016) (alterations added). Finally, "[i]f two or more defendants jointly cause harm, each defendant is held liable for the entire amount of the harm; provided, however, that the plaintiff recover only once for the full amount." *Honeycutt v. United States*, 137 S. Ct. 1626, 1631 (2017) (alteration added; citation omitted).

CASE NO. 18-61017-CIV-ALTONAGA/McAliley

Defendants' objection ignores "well-established principles of joint and several liability." (Pl.'s Resp. to Objs. 9).  The case law makes clear that although Plaintiff cannot collect from Pillonato and Ramsey any amount it has already recovered from the other named Defendants, that limitation does not change the amount of the money judgment.  This objection is overruled.

Defendants also object to the recommended bans on telemarketing and remotely created payment orders ("RCPO[s]").  (*See* Objs. ¶¶ 4–5).  While the Court could reject these two objections on the basis that Defendants failed to raise them in their Response or Surreply, the Court exercises its discretion to review them on their merits given Defendants' *pro se* status.

Defendants contend the RCPO ban is overbroad because it will prevent them from accepting "any all checks."  (*Id.* ¶ 4).  Not so.  The Proposed Final Order of Permanent Injunction and Monetary Judgment [ECF No. 251-1] ("Proposed Final Order") only prohibits Defendants from accepting a check if it is "initiated or created by or on behalf of the payee."  (*Id.* 5).  As Plaintiff notes, an RCPO "is created not by the party on whose account it draws (the payor), but rather by the party accepting payment (the payee)."  (Pl.'s Resp. to Objs. 9).  Because Defendants may still accept checks written by their customers, the Proposed Final Order is not overbroad.

Defendants also object to the telemarketing ban in the Proposed Final Order because it "effectively prohibit[s] them from using a telephone in any manner whatsoever in conducting any business whatsoever . . . ."  (Objs. ¶ 5 (alterations added)).  Defendants are again mistaken.  The Proposed Final Order only precludes Pillonato and Ramsey from using telephones as part of a telemarketing sales campaign.  (*See* Proposed Final Order 5).  Defendants are otherwise free to use telephones in connection with any job or business.  Given Defendants' history of unlawful marketing (*see* Report 15), the telemarketing ban in the Proposed Final Order is not overbroad.

CASE NO. 18-61017-CIV-ALTONAGA/McAliley

Defendants' objection to the Proposed Final Order's requirement they turn over certain items of jewelry to the Receiver because they purportedly do not possess the requested items fares no better. (*See* Objs. ¶ 3). Plaintiff has supplied receipts showing Ramsey purchased the jewelry. (*See* Certification of Records of Regularly Conducted Activity [ECF No. 241-3]). This evidence corroborates the adverse inference that can be drawn from Defendants' Fifth Amendment invocation when asked questions about the items at their depositions. (*See* Pl.'s Resp. to Objs. 10 (citations to the record omitted)).

Finally, Defendants ask "to be heard on the terms of the injunction," in the event the Court does not accept their other objections. (Objs. ¶ 8). Defendants have had the benefit of *multiple* rounds of briefing, including raising objections pertinent to the terms of the Proposed Final Order. (*See id.* ¶¶ 3–5). The undersigned sees no need for yet another round of motion practice on the scope of the permanent injunction.

### III. CONCLUSION

For the foregoing reasons, it is

**ORDERED AND ADJUDGED** that the Report **[ECF No. 251]** is **AFFIRMED**. Plaintiff, Federal Trade Commission's Motion for Summary Judgment **[ECF No. 228]** is **GRANTED**. A permanent injunction against Defendants will be entered by separate order.

**DONE AND ORDERED** in Miami, Florida, this 4th day of April, 2019.

_____

**CECILIA M. ALTONAGA**
**UNITED STATES DISTRICT JUDGE**

cc:     counsel of record